SOMERS (BRICE v.). See Case No. 1,856.

---

## Case No. 13,169.

### SOMERS v. The JERSEY BLUE.

[2 N. J. Law J. 359.]

District Court, D. New Jersey. Nov. 4, 1879.

#### SEAMEN—WAGES—ASSIGNMENT OF.

A pilot purchased a share in the boat on which he was serving, and, having paid part of the purchase money, stipulated with the other owners that they should retain yearly, out of his wages, such sum as he was able to spare until the residue of the purchase money should be paid. *Held*, that this was not an assignment of unaccrued wages, within the meaning of section 4536, Rev. St., and that this agreement gave no authority to the owners to apply any part of the wages to the purchase money without further directions from the pilot.

Exceptions to the claim for wages overruled. Libel in rem.

J. Warren Coulston, for libelant.
Samuel H. Grey, for claimant.

NIXON, District Judge. The libel is filed in this case by William P. Somers for the balance due to him on account of his wages as pilot on board the steamboat Jersey Blue, for the years 1876 and 1878. He acknowledges that he has been paid in full for the year 1877. The defense interposed is that the libelant was one of the owners of the steamboat; that, at the time of her purchase by him and the respondents and some other parties, he stipulated and agreed to pay the sum of $2,000 for four twenty-seconds of the said steamer; that he paid in cash $350, and made an arrangement with the other owners that he should serve as pilot in running the said boat, and that, from his earnings as pilot, there should be yearly retained by the other owners such sum of money as he was able to spare, until the residue of the consideration of his purchase should be paid; and that, in accordance with such agreement and understanding, the sum of $318, which he now claims as wages, was retained and credited on his indebtedness at the close of the year 1876, and the further sum of $485.08, also claimed by him, was appropriated and credited at the end of the year 1878. It appears in the case that, during the intervening year of 1877, he sold to his brother, James Somers, the one-fourth of his interest in the boat, to wit, the one twenty-second part, for $500, which sum was paid by the purchaser, and credited on the libelant's account for that year.

The case was referred to Commissioner Belville, to take testimony upon the issues raised by the libel and answer, and report thereon to the court. He has made his report, sustaining the whole claim of the libelant, to which two exceptions have been filed by the proctor of the respondents: (1) Because the commissioner finds that the weight of the testimony in regard to the alleged agreement is in favor of the libelant. (2) Because he finds that the alleged agreement by the libelant to allow a portion of his wages to stand for a specific purpose, to wit, for the payment of the debt incurred by the libelant in the purchase of a share of the said steamboat, was in fact an assignment thereof before the wages were earned, and contrary to the provisions of sections 4535 and 4536 of the Revised Statutes of the United States.

1. I think the first exception is well taken. It is true that the libelant denies under oath any such arrangement or agreement, but he is contradicted by Hiram S. Bright, the master, with whom the contract is alleged to have been made, and Cyrus Simmons, a former owner, but now having no interest in the controversy, and Henry Allen, who became responsible for and paid the libelant's share of the purchase money, and for whose benefit the wages were to be retained; the first named testifying that he made the arrangement with the libelant at the time of the purchase; and the remaining two affirming that Somers admitted to them, severally and at different times, that such an agreement had been entered into. The circumstances also support this view of the case. At the close of the season of 1876 the sum of $318 was due to the libelant above all amounts received by him on account. It does not appear that he ever sought to collect this sum, or to claim it, until 1879. None of the earnings of 1877 were retained, for the apparent reason that he had paid $500 on account of his indebtedness by a sale of one-fourth of his interest in the boat. I con-

strue his long acquiescence in the retention of the balance of his earnings in 1876 into an admission on his part that the sum had been or should be applied to the payment of the consideration due from him on the purchase of the steamboat, and a recognition by him of the understanding or arrangement that the surplus of his wages, above his necessary living expenses, should be thus applied.

2. I have more difficulty in regard to the second exception, and the trouble arises from two sources: First, from a doubt whether the transaction falls within the prohibition of section 4536 of the Revised Statutes, and, second, if it does not, whether, in view of the indefinite terms of the agreement, there is any authority, without the express or implied assent of the pilot, arbitrarily to apply all that remains due of the earnings of 1878 to the payment of his debt. With regard to the first, is the case under consideration an assignment or sale of wages, in the sense in which these phrases are used in the section? It may come within the letter of the statute, but it does not fall within its spirit and intent. The legislation is for the benefit of seamen, who are the wards of the admiralty courts, and no interpretation should be given to it which would work to their injury. It will hardly be affirmed that the construction invoked by the proctor of the libelant would advance the interests of, or result in benefit to, the seamen, as it deprives them of all opportunity of buying a share in vessels and applying their future services on board in their navigation toward the payment of the purchase money. I must therefore hold that there was no such assignment or sale of wages by the libelant as rendered the contract or agreement void; and that the respondents are entitled to withhold such portion of his earnings as he could spare from his living expenses for the payment of his indebtedness. But it does not follow, from the foregoing construction of the agreement or of the law, that the respondents are entitled to retain the balance of the wages of 1878 in controversy without the assent of the libelant. As soon as the season closed he demanded the residue of his earnings. His monthly wages had been reduced, and there is no proof that he ever acknowledged that it did not take the whole for his support. Under the contract and arrangement set forth and admitted in the answer, the respondents had no right to retain any sum, large or small, without his consent, as he was the sole judge of the necessary living expenses; and no such acquiescence can be inferred in regard to the earnings of 1878 as must be inferred from those of 1876.

The exceptions to the report must be sustained, and a decree be entered in favor of the libelant for the balance due for his services in 1878, as found by the commissioner, to wit, the sum of $297.68, with interest from the 1st day of January, 1879, to the date of signing the decree.